UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T<small>HOMAS</small> B<small>AGNASCO</small>

   Plaintiff,

v.

D<small>IVERSIFIED</small> P<small>LASTICS</small>,
I<small>NCORPORATED</small>

   Defendant.

_____/

Case No. 19-13546

S<small>ENIOR</small> U. S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

U. S. M<small>AGISTRATE</small> J<small>UDGE</small>
R. S<small>TEVEN</small> W<small>HALEN</small>

**O<small>RDER</small> G<small>RANTING</small> D<small>EFENDANT'S</small> M<small>OTION TO</small> S<small>UMMARY</small> J<small>UDGMENT</small> [15]**

On December 2, 2019, Plaintiff Thomas Bagnasco filed this action against his former employer, Defendant Diversified Plastics, Incorporated ("Diversified Plastics"). Plaintiff worked as a sales representative for Diversified Plastics for twelve years until he was terminated on July 31, 2019. Plaintiff's Complaint [1] alleges age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1991) (Count I), age discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act, MCL § 37.2101 *et seq.* (1992) (Count II), violation of Michigan Sales Representative Commission Act, MCL § 600.2961 (1992) (Count III), and Unjust Enrichment (Count IV).

On December 17, 2020, Defendant filed a Motion for Summary Judgment [15]. Plaintiff filed a Response [19] on January 18, 2021. Defendant filed a Reply [22] on February 2, 2021. On April 29, 2021, the Court held a hearing on the Motion [15]. As acknowledged on the record, Plaintiff failed to address his age discrimination claims in his Response [19] brief and has therefore abandoned these claims. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). In regard to the remaining claims, for the reasons stated on the record and explained below, Defendant's Motion for Summary Judgment [15] is **GRANTED**.

## FACTUAL BACKGROUND

a. <u>Plaintiff is Hired</u>

Defendant Diversified Plastics, Inc., based in Minnesota, manufactures and sells plastic injection molding components to customers in the automotive, medical, and pneumatic industries throughout the country. (ECF No. 15-2, PageID.112). Before working full time at Diversified Plastics, Plaintiff owned his own company and independently contracted with Diversified Plastics as a sales representative in Michigan for eleven to twelve years. (*Id.* at 111). In 2008, Plaintiff accepted an offer from Defendant's president, Jim Dow, to work full time as a sales engineer for Defendant. (*Id.*).

b. Terms of Compensation

After salary negotiations, Plaintiff accepted a base salary of $40,000 plus expenses such as for his car, phone, and office space lease. (*Id.* at 114-15). In addition, the parties agreed that Plaintiff would be paid a 3% commission on all sales in his territory, except those serviced by different sales engineers. (*Id.* at 115, 118); (ECF No.15-3). His sales territory included Michigan, Ohio, Indiana, Kentucky, Tennessee, Wisconsin, Illinois, Pennsylvania, and all of the east coast states from Maine to Florida. (ECF No. 15-2, PageID.118). Plaintiff claims that this 3% commission agreement was governed by a written contract for the first two to three years of his employment and then by a verbal agreement. (*Id.* at 114).

In addition, when Kevin Hogan replaced Jim Dow as president of Diversified Plastics, he gave Plaintiff an additional 3% commission on new tools and molds that Plaintiff helped to develop for a customer. (*Id.* at 124). This was governed by a verbal agreement. (*Id.* at 125). Both parties agree that they neither had a written agreement nor a discussion regarding commissions post-termination. (*Id.* at 123, 133-34); (ECF No. 15-5, PageID.149).

c. Employment Duties

Plaintiff's employment duties included finding new customers, managing existing customers, and selling products. (*Id.* at 117). Plaintiff was also minimally

involved in negotiations of purchase orders, however, he admits that the Vice-President, Annette Lund, usually handled negotiations until completion. (*Id.*). Ms. Lund, who was Plaintiff's supervisor for several years, states that he was a "very hard worker" and excelled at getting his foot in the door to recruit new customers but was not as good at closing the deal in acquiring purchase orders. (ECF No. 15-5, PageID.146).

    d. <u>Plaintiff is Terminated</u>

On July 29, 2019, Kevin Hogan called Plaintiff to fire him. (ECF No. 15-2, PageID.128). During the call, and in a subsequent email, Hogan stated that Plaintiff's sales position was being eliminated so that the company could focus their business efforts in Minnesota, where it is headquartered, and in California. (*Id.* at 118); (ECF No. 15-11). Plaintiff agreed to work until August 30th to help transition his accounts to other sales engineers and in-house representatives.

Plaintiff and Hogan negotiated a severance package, which Hogan recommended Plaintiff look over with a lawyer. (ECF No. 15-2, PageID.129). Hogan offered Plaintiff an extension of his salary, expense payments, 25% of his commissions until December 2019, and medical coverage until April 2020. (ECF No. 15-6, PageID.153). It is unclear what the parties ultimately agreed to. Plaintiff also received $260,000 from the company's Employee Stock Ownership Plan. (ECF

No. 15-2, PageID.135). Plaintiff claims that he received commissions for all of the sales he completed during his employment through August 30, 2019. (*Id.* at 123, 135).

## LEGAL STANDARD

Defendant moves for summary judgment on all claims. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### I. Count III: MI Sales Representative Commission Act Violation

Under the Michigan's Sales Representative Commissions Act, "[a]ll commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination." MICH. COMP. LAWS § 600.2961 (4) (1976). A principal who fails to comply is liable to the sales representative for damages. MICH. COMP. LAWS §

600.2961 (5) (1976). The Act is applicable to both written and oral employment contracts. *Ramirez v. Int'l Bus. Machines Corp.*, 829 F. Supp. 2d 555, 563 (E.D. Mich. 2011).

Here, the parties agreed that Plaintiff would receive a 3% commission on all completed sales in his territory. Plaintiff claims that this was first governed by a written contract, which lasted two or three years, and replaced by a verbal agreement with the same terms. (ECF 15-2, PageID.114). Although Plaintiff claims that he received all of the commissions for sales made during the time of his employment, he claims that Defendant violated this Act by not paying him a commission post-termination, considering that he was instrumental in recruiting customers, retaining them, and increasing their orders. Because Plaintiff has failed to show that he procured any sales post-termination, this claim cannot survive summary judgment.

Under Michigan's procured sale doctrine, an "agent is entitled to recover his commission whether or not be has personally concluded and completed the sale," provided that "his efforts were the procuring cause of the sale." *Reed v. Kurdziel*, 352 Mich. 287, 294 (1958). In order to be the procuring cause of a sale, the agent must "participate in the negotiation of a given contract of sale" even if he or she "originally introduced the parties." *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 616 (6th Cir. 2003). Further, the agent "may only obtain an award as the

procuring cause of post-termination sales where the written agreement is silent." *Id.* Here, although the parties' agreement is silent about post-termination sales, a reasonable jury could not rule in Plaintiff's favor, because it is undisputed that he did not participate in the negotiation of any post-termination sales.

Alternatively, the customer procurement doctrine "allows an agent to recover a commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale." *Lilley v. BTM Corp.*, 958 F.2d 746, 751 (6th Cir. 1992). However, because customer procurement is "determined by the contract between the agent and the principal," Plaintiff cannot recover under this doctrine, because his employment contract did not prescribe any post-termination commissions from sales to his customers.

Lastly, Plaintiff argues that he may recover post-termination commissions under the life of a part doctrine, which would allow Plaintiff to recover post-termination commissions of the sale of the new tools he developed for customers. However, because there is no "genuine issue of material fact regarding whether the parties had an implied-in-fact contract to pay post-termination commissions for the life of the part," summary judgment in Defendant's favor is still proper. *Ruppert v. Mold Masters Co.*, No. 244726, 2004 WL 1161417, at *2 (Mich. Ct. App. May 25, 2004).

## II. Count IV: Unjust Enrichment

To sustain an unjust enrichment claim, a plaintiff must demonstrate (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to the plaintiff as a result. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991); *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 23 (2013). Unjust enrichment is an equitable remedy that a court may impose in lieu of an express contract between the parties in order to prevent injustice. *Meisner Law Group PC v. Weston Downs Condominium Association*, 321 Mich. App. 702 (2017). In short, the court implies a contract where none exists. *Id*; *Detroit v. Highland Park*, 326 Mich. 78, 100, 39 N.W.2d 325 (1949) (an implied-in-law contract "does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished even, in case no contract was intended." (quoting *Cascaden v. Magryta*, 247 Mich. 267, 269 (1929))). Since it is undisputed that the parties had at least a verbal agreement regarding Plaintiff's commissions and this agreement did not include a provision for post-termination commissions, the Court may not imply a contract here for equitable purposes. Defendant, therefore, is entitled to summary judgment on this claim.

### CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [15] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **CLOSED**.

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: June 7, 2021 | Senior United States District Judge |